TEXAS & P. RY. CO. v. SOCIETY FOR RELIEF OF DESTITUTE OR-
PHAN BOYS et al.

(Circuit Court, E. D. Louisiana. May 25, 1893.)

No. 12,108.

LANDLORD AND TENANT—INTERPRETATION OF LEASE—RENT—VALUATION.

Certain property, demised for a term of 30 years, was described in the lease as "all the batture or space and piece of land," etc. The lessee covenanted to fill the ground to a certain level, build a cotton press thereon, and that at the expiration of the term "all sheds and buildings and other improvements, except machinery," which he had constructed, should become the property of the lessors. The lessee was to pay no rent for the first 6 years, then certain third persons were to decide upon the price or worth "of said real estate, and the undivided shares or interests in the batture or property herein leased," upon which valuation 8 per cent. was to be paid as rent for the ensuing 12 years, when a new valuation was to be made. *Held,* that the thing to be valued was merely the land itself, excluding the buildings erected thereon by the lessee.

In Equity. Bill by the Texas & Pacific Railway Company against the Society for the Relief of Destitute Orphan Boys, and others. Decree for complainant.

Howe & Prentiss, for complainant.

F. N. Butler, H. Leovy, and Farrar, Jonas & Kruttschnitt, for defendants.

BILLINGS, District Judge. This case is submitted for final decree upon the bill, answer, depositions, and exhibits. In the year 1874 the defendants executed a lease to Sam Boyd of a certain batture property for the period of 30 years, commencing on the 1st day of June, 1874. This lease, with all the leasehold rights, has been assigned, and is now held by the complainant.

The lease provides that the lessee was to fill up the ground leased, to a certain level, and that he was to put up certain buildings thereon; that he was to occupy for the first 6 years free of rent; that in the month of May, in the years 1880 and 1892, the mayor of the city of New Orleans and the judge of the probate court of the parish of Orleans shall decide upon the price or worth of the property leased, and that the annual rental for the period of 12 years from the 1st day of June, 1880, shall be 8 per cent. on the value so fixed by the said parties in May, 1880, and that for the period of 12 years from the 1st day of June, 1892, the annual rent shall be 8 per cent. on the amount of the valuation fixed by the said parties in May, 1892.

It appears that the selected officers fixed the value upon which the rent was determined for the 12 years from June 1, 1880, and that it was acquiesced in by both parties; that in May, 1892, the aforesaid officers fixed the value as the basis of the rent for the period of 12 years from June 1, 1892, and this suit is brought to correct the errors which the said parties are alleged to have made in establishing the basis for rent.

v.56F.no.10—48

The case shows that they have included, in the basis or valuation upon which the rent is to be computed, not only the batture land, but the buildings which have been erected by the complainant, and, further, that they have included the value of an adjoining piece of land belonging to the complainant, and the value of the building erected by the complainant, and of that portion of it which stands upon complainant's land.

It is conceded that the decree should go, directing that the value of complainant's adjoining land be taken out of the basis. The questions submitted, therefore, are, first, as to whether the appointed parties erred in making, as basis of the valuation, not only the land, but the building or buildings erected by the complainant thereon, and also whether said parties erred by making as part of said basis of valuation that portion of the building itself which has been erected by the complainant upon his own land, adjoining the leased property. These questions must be determined by the language of the lease itself. It may be remarked that the language used in the lease, which describes the leased property, is derived from common-law sources, rather than from the sources of our own law. The property leased is described as all the batture or space and piece of alluvial soil, etc. The habendum describes the property as, "all and singular, the above mentioned and described batture property, with the appurtenances." The covenant with reference to the buildings or building is as follows: That "the lessee cause to be built upon the herein-described property a cotton press similar in style and construction to Penn's Cotton Press;" that "on the expiration of said term of thirty years all sheds and buildings and other improvements, except machinery, which said lessee or his heirs shall have built or placed upon said property shall, without further or other consideration," etc., "become, ipso facto, property of said lessors, and the same effect shall result from any annulment or dissolution of the lease in consequence of the nonfulfillment by the lessee of any of his obligations under this contract." I think the authorities cited by the complainant authorized the conclusion, as a matter of law, that while the buildings, after their erection, were inseparable from the land, and inalienable except in connection with it, they remained the property of the complainant until the expiration of the lease, either by lapse of time or other dissolution; but I do not think this conclusion helps in deciding the questions submitted, to any great extent.

It appears from the reference above made that the leasehold estate is referred to as the "following described property," and that, in contradistinction from that, the buildings to be erected are referred to as a cotton press, and as sheds, buildings, and other improvements. If, now, we turn to what is to be valued by these parties selected,—the mayor and the judge,—we find they are to value and decide upon the price or worth of said real estate, and the undivided shares or interests in the batture or property herein leased. I think the "real estate," and "the batture or property herein leased," are intended by the parties as different forms of ex-

pression for the same thing. In the first expression they refer to the value of the whole; in the second, to the value of the respective interests of the lessors. But it is to be observed that the expression, "batture or property," clearly, would mean what was referred to as the thing leased; that being referred to as "the following described property, to wit, all the batture or space or piece of alluvial soil lying," etc.

It is to be observed that they are to fix the price or worth of said real estate in an instrument in which the land is termed "batture property," and the erections thereupon are termed "sheds, buildings, and other improvements." When this is borne in mind, the word "real estate," especially when used as synonymous with "the batture or property herein leased," it seems to me, must have meant the land without the buildings. The substance of the lease, upon this construction, would be that the lessee was to fill up and grade this batture and low-lying property. He was to erect upon the land so leased certain buildings, which at the expiration of the lease were to become the property of the lessors. He was to enjoy the property for the first six years without any rent. For the remaining portion of the term the lessee was to pay a rent which would be computed upon a basis of 8 per cent. on the value of the land at given times. This interpretation would make the lessors receive the permanent value caused by filling in, and the buildings themselves, at the close of the lease; and for 24 years out of the 30 which was the period of the lease, they would receive 8 per cent. of the growing value of that batture property or land.

It seems to me that an arrangement which should give such an income upon the value of the land itself would be not only more in accordance with the terms used in defining what is to be the basis of the valuation, but would be more naturally what a lessor would seek to derive as income from his land, and what a lessee would be willing to give as a rental for land. I have had great difficulty in dealing with this question, because the terms in the lease seem to have been selected and used with very little accuracy; but, on the whole, it seems to me that the fair construction of the lease, with reference to what was to be the value as a basis for the rental, is that it was the land without the buildings.

As to whether, in getting at a basis of the valuation upon which the 8 per cent. is to be calculated, the value of the building upon complainant's land should be included. Since I have come to the conclusion that no part of the building, even upon the land of the lessors, is to be included in the estimate of value upon which the rent is to be calculated. it follows, necessarily, that the portion of the building built by complainant upon his own land is not to be included. My conclusion, therefore, is that the basis or sum upon which the rent should be calculated should include the value of the plots Nos. 1, 2, and 3, making a value of $132,574.50; that the value of the improvements on plot No. 1, $32,000, and the value of complainant's plot No. 4, $13,015.62, and the improvements on the same, $8,000, should be excluded from the basis of the estimate, and that the

annual rent for the period of 12 years from the 1st day of June, 1892, should be 8 per cent. upon the sum or value first mentioned, to wit, $132,574.50.

The decree will be to correct the findings of the parties appointed under the lease to fix the value, in accordance with this opinion.