WILLIAMS, Judge.
This is an appeal by plaintiff, The Warwick Corporation [“Warwick”], from a decision of the trial court, interpreting a lease agreement its predecessor had entered into with defendant Stephen C. Hartel. Remaining defendants are members of the Hartel family. [Defendants will be referred to collectively as “Hartel” for purposes of clarity and convenience]. Hartel has answered the appeal, also asserting that the trial court misinterpreted the lease agreement.
In 1951, Hartel and Winchester Apartments, Inc. entered into a 99 year lease of property upon which the Warwick Hotel is located. Plaintiff is the current lessee. At the time of the lease, however, the hotel had not yet been constructed. Pursuant to financing (to be used for construction), the lessee’s rent was fixed for the first 34 years of the lease period. After that time, the lease agreement provided for an increase in rent based upon 6% of the appraised value of the land. The sections of the lease setting forth the method of fixing the new rent and the time periods in which it was to take effect were in dispute. Plaintiff filed for a declaratory judgment in 1985. After trial, the lower court rendered judgment. It is this judgment that the parties request we review.
The pertinent parts of the lease are:
SIXTH: During the term of this lease, Lessee shall pay to Lessor, ... annual net rents for the leased premises in accordance with the following schedule, ... to-wit:
“(a) The rental for the first year of this lease beginning January 16, 1951 and ending January 15, 1952 shall be Eight Thousand Pour Hundred and no/100 ($8,400.00) Dollars;
(b) The rental for each of the thirty-four (34) years beginning January 16, 1952, and ending January 15, 1986, shall be Eleven Thousand Two Hundred Fifty and no/100 ($11,250.00) Dollars;
(c) The rental for each of the thirty-two (32) years beginning January 16, 1986 and ending January 15, 2018 shall be determined by appraisers to be chosen as hereinafter provided.
(d) The rental for each of the final thirty-two (32) years beginning January 16, 2018 and ending January 15, 2050 shall be determined by appraisers to be chosen as hereinafter provided.
(e) The rental fixed for the first thirty-five (35) years shall be constant and may not be altered or changed.
(f) The rental for the balance of the lease shall be a minimum rental. For the purpose of determining the rental for the said balance of sixty-four years, the lease shall be divided into five (5) periods of ten (10) years each beginning on the first day of the thirty-fifth year of said lease and one final period which shall be for fourteen years. The rental for each period shall be determined by appraisers as hereinafter provided.
SEVENTH: The appraisers shall fix the annual net rents, subject to the conditions of paragraph numbered Ninth, for each additional period referred to in paragraphs (c) and (d) of Section Sixth herein-above on the basis of six (6%) per cent net revenue on the value of the land with due regard to the probable enchancement in value of said land during the entire period, provided, however, that the said annual rent for the said period in Section (c) above so fixed by said appraisers shall in no event be less than Fifteen Thousand and no/100 ($15,000.00) Dollars per annum and that the said annual rental for the said period in Section (d) above so fixed by said appraisers shall in no event be less than Twenty Thousand and no/100 ($20,000.00) Dollars per an-num. ...
*1342 EIGHTH: Subject to the conditions of paragraph numbered Ninth, should the Lessor fail, refuse or neglect to select appraisers as hereinabove set out, than this lease shall continue at the minimum rates as herein stipulated for periods of ten years each, any one failure to so select shall not preclude the rights of Lessor to again elect at the beginning of the next ten year period of the lease.”
The trial court ordered that the rents should be fixed for 10 year terms. Plaintiff argues that the lease provides for fixed terms of 32 years, not ten. At first blush, the lease does appear to be somewhat contradictory in that it refers to both 32 and 10 year periods. A common sense approach considering all of the provisions clearly leads us to the conclusion that the remainder of the lease is to be divided into ten year periods. La.Civ.C. art. 2050. The lease calls for appraisals every ten years for the purpose of determining rental: “Section 6(f):
The rental for the balance of the lease shall be a minimum rental. For the purpose of determining the rental for the said balance of sixty-four (64) years, the lease shall be divided into five (5) periods of ten (10) years each beginning the first day of the thirty-fifth year of said lease and one final period which shall be determined by appraisers as hereinafter provided.”
The 32 year periods are used to set forth a minimum rent, as seen in Section 7 of the lease, supra.
Furthermore, as noted by defendant in brief to this court, Section 8 of the lease provides further support for the ten year period. If an appraisal does not take place according to the provisions of the lease, then the rent of the previous ten years continues in force to the beginning of the next ten year period.
There has been some discussion among the parties as to the method of interpretation of the lease agreement. Specifically, both parties argue that any ambiguities in the agreement should be construed against the opposing party. See La.Civ.C. art. 2056 and Comment (b) thereto. We find, however, no need to resort to this method of interpretation. The provision discussed above and the others discussed herein are clear and “lead to no absurd circumstances.” There is, therefore, no reason for us to inquire beyond the language of the lease agreement itself. La.Civ. art. 2046. We note that although the current code articles governing interpretation of contracts were enacted in 1984, those articles cited do not change previous law.
The method of appraisal of the property for the purposes of determining future rent is also contested by the parties. Based upon the following section, the trial court held that the appraisers were not to consider any “negative factors” in determining the value of the land:
“SEVENTH: The appraisers shall fix the annual net rents ... on the basis of six (6%) per cent net revenue on the value of the land with due regard to the probable enhancement in value of said land ...”
We agree with plaintiff that this provision does not preclude an appraisal from considering all of the factors affecting the property, whether positive or negative. To arrive at a value without consideration of all factors is impossible. To this end, defendant complains of the following portion of the trial court’s judgment in setting forth what an appraisor may consider:
“any enhanced or increased value due to the improvements which have taken place in the area, in the last thirty year and any projection of enhanced value which can reasonably be calculated for ten (10) years into the future, based on that which presently exists. Any plans for the future improvements in the area such as the projected New Orleans main library expansion to the rear of the Warwick would be too speculative at this time, but may be an imperative for the future.”
Defendant argues that this provision limits appraisers to a consideration of develop *1343 ments that currently exist. We find that the trial court’s interpretation is overly restrictive. We agree, of course, that speculative development should not be considered in an appraisal. Development as it directly affects the land, however, clearly has a place in the appraisal process. To restrict the appraisal process goes against the agreement. According to expert testimony at trial, the appraiser takes many factors into consideration, including future development. We hold that the appraisers should not be restricted in determining the value of the property according to standard industry practices.
The term “probable enhancement” leads to further disagreement between the parties. Defendant argues that the value of the land should include the Warwick Hotel, constructed by lessee after the lease was entered into. There is no doubt that the parties contemplated the construction of what is now the Warwick Hotel on the leased property. Plaintiff refers to an 1893 federal court decision (Texas & Pacific R. Co. v. Society for Relief of Destitute Orphaned Boys, 56 F. 753 (E.D.La.1893), wherein the court held that only the land and not improvements made by lessee, are considered in determining the value of the land.
Defendant has researched and briefed the term “enhancement” at length throughout these proceedings. He also attempts to distinguish the Texas & Pacific decision, arguing that it was based on an interpretation of the parties’ intent. He also points out that it has never been cited in any reported case.
There is no doubt that the type of building erected on the land should be considered in determining the land’s value. The value of land on which a profitable multi-storied office building is located would certainly be greater than land on which an aging eyesore which must be demolished is located. For that reason, and for that purpose, the building should be considered in the appraisal process. It is clear that defendant has a strong interest in the building: the lessor will own the building at the end of the lease and is the co-insured of the building. Nevertheless, there is no support, however, for inclusion of the value of the building itself in the appraisal. Finally, the plain language of the lease itself fixes the rents based upon the value of the land.
Finally, the parties disagree on the method of calculation of rent. Defendant argues that the rent for the 10 year (and final 14 year) period should be 6% of the average of the current appraised value of the property and the projected value at the end of the period. Plaintiff disagrees with this method. We find defendant’s proposal unsupported and untenable. Obviously, the main purpose of reappraisal every ten years was to adjust periodically to changes in the real estate market. To allow an appraiser to project the value for the future would defeat the purpose of the provision and may be somewhat speculative.
For the foregoing reasons, the decision of the trial court is affirmed insofar as it fixes 10 year periods for assessment of future rent.
The decision below is reversed to allow the appraisers to take into account all factors, negative and positive, necessary to accurately assess the value of the land, as outlined in this opinion. The building itself is not to be included as part of the value of the land, but may be considered insofar as it affects the land.
REVERSED.